InSLEY, J.
The defendant, who is sued as the endorser of a promissory note made payable at the Citizens’ Bank, New Orleans, which was protested for non-payment at its maturity, on the 20th December, 1862, resists the payment of it for the want of notice of protest.
He contends, 1: “That the notice was not sent to him at the post-office, where he was in the habit of receiving his letters, etc., nor to the one nearest to his residence.
2. That the mails at the time of the protest had been interrupted, and that it was the duty of the holder to send the notice by some other means.
The following facts were proved on the trial of the case: That the notary, who made the protest on the day of its date, deposited in the post-office at New Orleans, a notice of protest, etc., and addressed to tho endorser at NapoleonviUe, Louisiana;
That, at the time when the notice was put in the post-office, all mail communication between New Orleans and the parish of Assumption, *44 wherein the defendant then resided, was broken up iii consequence of the war;
That.the Albemarle post-office was the one nearest to the defendant’s residence, and that that was his post-office, and that he was not in the habit of receiving- his letters, newspapers, etc., at the post-office at Napoleonville.
Under ordinary circumstances, the existence of such a state of facts would, by the commercial law, as it is interpreted by our Courts, discharge an .endorser, and we have now to determine whether in view of the political state of the country, when the protest was made, he is, for the causes assigned, equally exonerated.
It is a rule- of the commercial law, that want of protest, etc., is excused by proof that these requirements were prevented by inevitable casualty or superior force; and, also, that if the political state of the country renders it impossible for the holder of negotiable instruments to act, they will not be required. Chitty on Bills, 360 and 480. Edwards on Bills and Promissory Notes, 458, 392 and 492. Story on Bills, sec. 286. The doctrine rests upon the maxim, impossibiliwn nulla obligaiio esl.
We must, therefore, ascertain whether the holder of the note sued on, having at his command some practicable and ready means of giving to the endorser notice of the protest, at the earliest moment after the protest, should not have resorted to it, to hold him liable. The writers on mercantile law inform us that there are three modes of serving notices of protest: 1st, by mail, 2d, by ordinary conveyance, and 3d, by special messenger. The usual mode is by mail; but when, as in the present case, it was publicly known, that the whole mail seiwpe above New Orleans was broken up, it was a vain thing to put the notice into the post-office. This Court, in Laperte, v. Landry, 5 N. S., lays down a sensible rule. It holds that where notice may be conveyed by mail, it suffices to put it in time, properly directed, in the post-office; but where the notice cannot be conveyed by mail, it is idle to put it into the post-office; for the post-office affords a safe means of conveyance, but not a legal place of deposit for notices. See also Union Bank v. Campbell, 2 An. 759. When the law requires steps of diligence to convert conditional into absolute obligations, it will not permit, as a substitute for such steps, vain and idle ceremonies. The law merchant, which recognizes the mail as a legal means of serving notices, supposes it to be a practicable one; and it requires, if there is no mail, that the notice be sent by the earliest conveyance. Chitty on Bills, 516, 522, 504, 506, 518, and Edwafds on Bills, pages 572 and 573.
Was it impossible, or even impracticable, to serve a notice of protest on the defendant at or within a reasonable time-after the protest, in any other way than by depositing it in the post-office?
All that district of country, in which lies the parish of Assumption, was occupied and controlled by the United States forces from October, 1862, until June, 1863, when it was occupied temporarily by the Confederate army. At the time when the protest was made, commercial intercourse between the inhabitants of New Orleans apd those of the parish of Assumption, was not unlawful; for, on the 16th of August, 1861, by a proclamation of the President of the United States (issued in pursuance *45 of the fifth section of an act of Congress, approved 13th July, 1861), it was declared, “that the inhabitants of the State of Louisiana, and other States mentioned (except the inhabitants of that part of the State of Virginia, lying west of the Alleghany mountains, and of such other parts of that State, and the other States as may maintain a loyal adhesion to the Union and the Constitution, or may be from time lo time, occupied and controlled by forces of the United States, engaged in the dispersion of said insurgents) are in a state of insurrection, and that all commercial intercourse between the same and the inhabitants thereof, with the exception aforesaid, and the citizens of other States, and other parts of the United States, will remain unlawful until such insurrection shall cease or has been suppressed.”
There was, therefore, no legal impediment at that time, nor could it have been contrary to public order, to serve a notice of protest on an endorser, residing in th.e parish of Assumption. Nor in point of fact, was it then impossible, or even impracticable to serve a notice on such endorser, either by ordinary conveyance or by a special messenger, for there was then free communication for loyal citizens of theUnited States, between the city and the residence of the defendant, and there was no lack of public conveyances plying between these two points, and passing directly before the defendant’s house, by means of which any notice addressed to him would unquestionably have reached him.
But the plaintiff invokes the maxim impossibilium nulla obligaiio esl, and says, that he was not obliged, under the circumstances, to give notice at all, and he refers us to authorities which recognize the maxim; but all those authors suppose a physical or moral impossibility as an excuse for omitting to give notice of protest to a party, and we have seen that there was neither the one nor the other in the present case.
He further contends that, the Legislature having prescribed the manner of giving notice of protest, the holder is not compelled to adopt any other, and he refers us to the act of 9th March, 1855.
The provisions of this act, in relation to the mode of serving protests by a notary, and the effect that the law attaches to his certificate, are not different, in this particular, from the provisions of the act of 1827, and it has been repeatedly held, in regard to this last act, that it did not change the general commercial law, in regard to the diligence to be'used in serving notices' of protest, and that that law, merely provided a new mode of proving such diligence. ” See the numerous cases collected in 1 Hen. Dig., p. 200, l 4, and 209,’\ 5.
If that means can be resorted to, the law deems it sufficient, and clothes the notary’s certificate as to the manner in which he served notices with legal authenticity; but, if that mode cannot be used at all, the holder of commercial paper is not excused, if he has not otherwise used any other practicable way of bringing.home notice to the party whom he wishes to charge, and, as such practicable means was readily available, we concur with the decision of Vechton v. Pruyn, 3 Kernan, 549, that “ as the mail could not be used, it was the duty of the holder to adopt some other means which would be the most certain to bring the .notice home to the endorser.”
In any contingency, had the notice put: into the post-office been duly *46 transmitted by mail, it would not have been legally served upon the endorser, for it was not properly addressed to him at Napoleonville, as the post-office of that place was neither the one nearest to his residence, nor that at which he was in the habit of receiving his letters, newspapers, etc.
This Court has frequently recognized the rule of the commercial law, with regard to notices of protest, that so far as it requires notices to be sent to the nearest post-office, subject to many exceptions, one of which is where the party to be notified is in the habit of receiving his letters at a more distant post-office, or by a more circuitous route, and that that fact is known.
The great object of the law, says the Court, is to give notice in as speedy and a convenient manner as can be done, and when there is a reasonable compliance with this rule it is sufficient.
Recognizing these principles of the commercial law, we are satisfied, from a careful examination of the whole evidence in this case, that the defendant does not come within any of the exceptions to the rule which requires notice to be sent to the nearest office.
There is much analogy between the present ease and that of Beenel v. Tournillon, 6 Rob. p. 500.
The briefs of both counsel, for the plaintiff and defendant, are ably prepared, but the argument of the plaintiff has not brought us to a different conclusion from the one reached by the Judge of the lower Court, who rendered judgment in favor of the defendant.
The evidence offered by the defendant during the progress of the trial, to prove that Albemarle and not the Napoleonville post-office was his post-office, was' objected to by the plaintiff on the ground that there was no allegation in the answer to let in the proof, and to put him upon his guard ; but the Court having received the evidence, a bill of exooptions was reserved.
The evidence was clearly inadmissible, under the general issue, (Pollard et al. v. Cook, et al., 4 Rob. p. 199), and the objection to it properly overruled.
It is, therefore, for the reasons above stated, ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed, at the costs of the appellant.
Labauve, J. recused.